**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**

LOUISE H. MCKLEMURRY                                                    PLAINTIFF

VS.                                          Civil Action No. 3:09-CV-181-HTW-LRA

J. DEWAYNE THOMAS, MICHAEL G. POND,
JOHN GADOW, JOINTLY AND SEVERALLY
AND JOHN DOES A THROUGH Z                                        DEFENDANTS

**Memorandum Opinion and Order**
**Granting in Part and Denying in Part Summary Judgment**

 Before this court are three motions for summary judgment: one filed by defendant

J. Dewayne Thomas ("Thomas") [docket no. 98], one filed by defendant Michael G.

Pond ("Pond") [docket no. 118], and one filed by John Gadow ("Gadow") [docket no.

122].  Each motion was filed pursuant to Fed. R. Civ. P. 56(a).[1]  Also before the court

are two other related motions: a motion to strike response [docket no. 112], filed by

Thomas, and a motion to supplement response [docket no. 131], filed by plaintiff, Louise

H. McKlemurry ("McKlemurry").

 In her second amended complaint, filed on Nov. 19, 2009, McKlemurry has

asserted claims for fraudulent misrepresentation, unjust enrichment, unlawful

interference with employment, slander, conspiracy, "wrongful firing by someone with no

legal standing involving her employment," theft of personal property, breach of verbal

---

[1] Fed. R. Civ. P. 56(a) states:
MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT.
A party may move for summary judgment, identifying each claim or defense—or the part of each
claim or defense—on which summary judgment is sought. The court shall grant summary
judgment if the movant shows that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law. The court should state on the record the
reasons for granting or denying the motion.

contract, legal malpractice, criminal impersonation, "making fraudulent statements to the Mississippi Department of Employment Security to be used to deny unemployment benefits and the payment thereof," aiding and abetting, retaliation, moral turpitude, mental anguish, pain, suffering and personal injury.

McKlemurry's initial complaint, filed on February 26, 2009, included causes of action under Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. § 2000e [2] *et seq*, [2] and Employee Retirement Security Act of 1974 ("ERISA"), Title 29 U.S.C. § 1001[3]. Her ongoing claims, as demonstrated by her oral arguments on April 29, 2010, show that her breach of contract and legal malpractice claims are founded on a dispute over employee retirement benefits, preempted by ERISA.

Defendants have removed this case from state court and invoked this court's federal question jurisdiction pursuant to Title 28 U.S.C. § 1331.[4]

## I. Background

Plaintiff was a former employee of both Thomas and Pond.  Thomas and Pond, attorneys at-law, each operated a law firm at 502 South President Street, Jackson, Mississippi.  Thomas employed the plaintiff as a legal secretary from 1992 to July 17, 2006.  She worked for Pond in the same capacity from 1996 through July 17, 2006.

---

[2] In her original complaint, plaintiff cited Title VII of the Civil Rights Act of 1964 to support a claim of age discrimination. Title VII prohibits discrimination by covered employers on the basis of race, color, religion, sex or national origin (see Title 42 U.S.C. § 2000e-2).

[3] Plaintiff has not cited ERISA in her original or amended complaints; however, this court has found her claim for breach of verbal contract, related to alleged promises by defendants to deposit a certain amount of funds into an ERISA governed retirement account, to be preempted by ERISA.

[4] Title 28 U.S.C. § 1331. Federal question states:
The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

Plaintiff says that in 2003 or 2004, she entered into two separate oral contracts with Thomas and Pond relative to her anticipated work on cases involving the Mississippi Department of Human Services ("MDHS") and Mississippi Workers Compensation Commission ("MWCC").  Thomas and Pond, she claims, each agreed to pay her $10,000.00 a year for three (3) years, the money to be invested into a 412(i)[5] retirement plan.  Plaintiff complains that she rendered services, but was not compensated as agreed.

Thomas and Pond opened annuity accounts and purchased life insurance on McKlemurry in October 2004. As of January 22, 2010, the annuity purchased by Thomas had an account value of $2,544.45.  The life insurance policy lapsed on October 1, 2005.  Pond claims he deposited $10,000 into an annuity he purchased for the plaintiff.

Plaintiff also mentions that Thomas and Pond represented her as attorneys in personal legal matters in 2003 or 2004.  She alleges that when Thomas and Pond discussed arrangements to pay into a retirement fund for her in lieu of paying her a salary for the work on the MDHS and MWCC cases, they were acting as her attorneys and providing legal advice regarding a tax advantaged pension plan.

In 2004, defendant John Gadow opened his law office next door to plaintiff's office.  Plaintiff alleges at that time Gadow began to interfere with her employment. This interference, she says, included yelling and hollering at her, criticizing her work, and

---

[5] Title 26 C.F.R. § 1.412(i) governs insurance contract retirement plans which are not subject to certain minimum funding requirements under the Internal Revenue Code.

making slanderous statements about her.  Gadow's interference, argues plaintiff, ultimately led to her wrongful termination by Thomas and Pond.

Finally, she alleges, Gadow went so far as to impersonate Thomas to submit false information to the Mississippi Department of Employment Security ("MDES"), resulting in her loss of unemployment benefits.

McKlemurry successfully appealed the initial denial of unemployment benefits. She had a hearing with an Administrative Law Judge on October 12, 2006, who reversed her initial denial of benefits.

## II.  Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In response to a motion for summary judgment, the non-moving party must provide specific proof demonstrating a triable issue of fact as to each of the elements required to establish the claim asserted. *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122-23 (5th Cir. 1988).  The court must resolve all reasonable doubts about the existence of a genuine issue of material fact against the movant. *Byrd v. Roadway Express, Inc.*, 687 F.2d 85, 87 (5th Cir. 1982).

### A.  Breach of Verbal Contract / ERISA related claims

The plaintiff has asserted claims of breach of verbal contract and legal malpractice against her employers Thomas and Pond.  She contends that they offered to set up and fund retirement accounts for her benefit, instead of directly compensating

her for certain work she did on MDHS and MWCC cases.  Plaintiff alleges that they never funded these accounts in the amounts they promised her.

In its order denying remand, this court already has ruled that McKlemurry's state law claims for breach of contract and legal malpractice are preempted by ERISA.  Order denying remand at 11, docket no. 68.  The only question remaining is whether the plaintiff has alleged sufficient facts to make either of these claims cognizable under ERISA.

Some federal laws, such as ERISA,[6] so completely occupy the field of law that they effect "complete preemption."  *Hubbard v. Blue Cross & Blue Shield Assoc.*, 42 F.3d 942, 945 n.5 (5th Cir. 1995).  In these cases, the state law claims are transformed into federal claims for the purpose of federal subject matter jurisdiction because federal law is the only law applicable in the area.  *Id*.

"ERISA preempts state law claims of fraud, breach of contract or negligent misrepresentation that have the effect of orally modifying the express terms of an ERISA plan and increasing plan benefits for participants or beneficiaries who claim to have been misled."  *Id* at 946.  In the *Hubbard* case, the Fifth Circuit affirmed the district court's grant of summary judgment for a fraudulent inducement claim, because the state law claim was preempted and ERISA did not provide a remedy for the specific factual situation alleged by the plaintiff.  *Id*.

---

[6] ERISA's preemtion clause, Title 29 U.S.C. § 1144(a) states:
(a) Supersedure; effective date
Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

Plaintiff's claims for breach of oral contract and legal malpractice are intimately intertwined with the formation and interpretation of the ERISA defined benefit plan of which the plaintiff was a participant.  Although, these claims are preempted by ERISA, a careful examination of the facts is necessary to determine if the plaintiff has presented sufficient facts and claims to pursue a cause of action under ERISA.

The plaintiff claims that Thomas and Pond promised they each would deposit $10,000 per year for three years into a retirement account for her.  This promise, she alleges, induced her to forego direct compensation in exchange for funding of a retirement account. Thomas and Pond opened deferred annuities for the plaintiff. In 2005, Thomas deposited $1892.62 [docket no. 99-5, Thomas check]  and Pond deposited approximately $10,000.  After these deposits, neither Thomas nor Pond deposited additional money.  McKlemurry charges them with legal malpractice because in recommending this arrangement, she alleges, they acted as her attorneys.  They are also liable for breach of verbal contract, she claims, because they did not live up their end of the bargain.

The facts and arguments advanced by the plaintiff are not supported by ERISA jurisprudence.  Defendants correctly maintain that individuals may not make oral modifications to a written retirement benefit plan covered by ERISA. *See Hubbard*, 42 F.3d 942.  The J.Dewayne Thomas, P.C. Defined Benefit Pension Plan was established on June 1, 2004.  The terms and requirements for the plan are outlined in the plan documents [Thomas Defined Ben. Pension Plan, docket no. 99-4].  The plan documents do not specifically require a contribution of $10,000 per year for three years.[7]

---

[7] The record contains a copy of the Thomas plan, but not the Pond plan. This Court relies on the Thomas plan to base its determinations.  The Thomas Defined Benefit Plan requires the

Because ERISA completely pre-empts state law claims related to the plaintiff's retirement account, and plaintiff has provided insufficient arguments and evidence for this court to identify cognizable claims under ERISA, plaintiff's breach of verbal contract claims and legal malpractice claims are dismissed.

Absent ERISA preemption of the breach of verbal contract claim, the Mississippi Statute of Frauds, Miss. Code Ann. § 15-3-1, would preclude this claim.  The Mississippi Statute of Frauds bars enforcement of verbal contracts which cannot be performed within fifteen months.[8]  The defendants purchased annuity contracts for the benefit of the plaintiff, but in Mississippi partial performance of an oral contract does not "take the contract out of operation of the statute of frauds."  *Kalavros v. Deposit Guaranty Bank & Trust Co.*, 158 So.2d 740, 744 (Miss. 1963).

Likewise, the legal malpractice claim has been preempted by ERISA, but even absent preemption, this claim cannot stand.  The plaintiff has provided no evidence of

---

employer to meet certain minimum funding standards as defined by ERISA rules.  Thomas Defined Ben. Plan, Section 12.2.  These funding requirements are defined as plan aggregates.  Whether defendants Thomas or Pond have met the funding requirements of the plans under ERISA cannot be ascertained from the evidence in the record.  The plan also references fiduciary responsibilities of the Board of Directors, see Thomas Defined Ben. Plan, Section 15, and benefits for plan participants upon termination of employment, see Thomas Defined Ben. Plan, Section 9.  Plaintiff has not asserted claims or provided evidence related to these issues.

[8] Miss. Code. Ann. § 15-3-1, writing requirement for certain contracts, states in pertinent part: An action shall not be brought whereby to charge a defendant or other party:
. . .
(d) upon any agreement which is not to be performed within the space of fifteen months from the making thereof;
. . .
unless, in each of said cases, the promise or agreement upon which such action may be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith or signed by some person by him or her thereunto lawfully authorized in writing.

an attorney-client relationship between herself and either Thomas and Pond with respect to matters related to her retirement accounts.

This court grants summary judgment as to the claims of verbal breach of contract and legal malpractice against Thomas and Pond.

### B. Fraudulent Misrepresentation and Unjust Enrichment

Plaintiff has filed claims of fraudulent misrepresentation and unjust enrichment. She says that Pond lied to her about leaving the law firm and transferring his interest to Gadow in order to fraudulent induce her to work for and train Gadow without compensation.  The plaintiff claims that in late 2004 or early 2005, Pond told her he was leaving to attend Tulane University in New Orleans, and transferring his law practice and her employment to Gadow.  McKlemurry depo. at 74.  Pond instructed her to train Gadow in handling bankruptcy cases. McKlemurry alleges that Pond never left, but maintained his deception about leaving in order to fraudulently influence her to provide training to Gadow, which she describes as tantamount to involuntary servitude.

Pond argues that he attempted to follow through on his plans to attend Tulane in the Fall of 2005, but Hurricane Katrina destroyed Tulane's campus in New Orleans  in August of that year.  Pond stated in an interrogatory response that he "attended one week of L.L.M. classes at Tulane prior to the onslaught of Hurricane Katrina in August of 2005.  Due to the hurricane, the semester was cancelled and [Pond] returned to Jackson to practice law."  Pond's responses to plaintiff's additional and revised first set of interrogatories, response to interrogatory no. 18.  During this time, Pond continued to provide work to the plaintiff and paid her a salary.

The plaintiff cites Miss. Code. Ann. § 97-19-39,[9] a criminal statute; the Mississippi Constitution Article 3, Section 15, barring slavery and involuntary servitude;[10] and Miss. Code Ann § 15-1-49[11] to support her cause of action for fraudulent misrepresentation.  The plaintiff inexplicably cites the Mississippi Code provision regarding a three-year statute of limitations for certain actions, Miss. Code Ann. 15-1-49, to support an unjust enrichment claim "under the theories of quasi contract" for the bankruptcy work she performed for Gadow.  The Mississippi statute cited bears no relation to the substance of her claim.

### 1. Fraudulent Misrepresentation

Under Mississippi law, to prove fraud, a plaintiff must present evidence to satisfy each of the following elements: "(1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's

---

[9] Miss. Code. Ann. § 97-19-39(b) is a criminal statute which provides in pertinent part: "[e]very person, who with intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by another false pretense, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property, or valuable thing, with a value of Five Hundred Dollars ($500.00) or more, upon conviction thereof shall be guilty of a felony and punished by imprisonment in the State Penitentiary not exceeding ten (10) years, and by a fine not exceeding Ten Thousand Dollars ($10,000.00)."

[10] MISS. CONST. ART. III, § 15 states:
There shall be neither slavery nor involuntary servitude in this state, otherwise than in the punishment of crime, whereof the party shall have been duly convicted.

[11] Miss. Code Ann. § 15-1-49. Actions without prescribed period of limitation; actions involving latent injury or disease
(1) All actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after.
(2) In actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury.
(3) The provisions of subsection (2) of this section shall apply to all pending and subsequently filed actions.

ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury." *Koury v. Ready*, 911 So.2d 441, 445 (Miss. 2005).

The statute of limitations for an action for fraudulent misrepresentation is three years pursuant to Miss. Code Ann. § 15-1-49. *Weathers v. Metropolitan Life Ins. Co.*, 14 So.3d 688, 691 (Miss. 2009). This "statute of limitations 'begins to run when all the elements of a tort, or cause of action, are present" or under Miss. Code Ann. § 15-1-49, "upon discovery of an injury." *Weathers v. Metropolitan Life Ins. Co.*, 14 So.3d 688, 692 (Miss. 2009). Discovery of the tort which leads to the running of the statute of limitations is an issue of fact. *Id*. The standard applied to running of the statute of limitations for fraud is whether the plaintiff actually knew, "should have known or should have made an inquiry, based on the information available to him." *Id*.

Plaintiff conceded at oral argument that she knew in the Fall of 2005 that Pond could not attend Tulane, but thought he could have attended a program at Jackson State University ("JSU") in Jackson, Mississippi. She said he decided not to attend JSU, but did not indicate when she was aware of that decision.

Defendants argue that both of these claims accrued when Pond failed to attend Tulane in the Fall of 2005; and thus, the three-year statute of limitations ran in the Fall of 2008. Plaintiff filed her first complaint in February of 2009. Further, they argue, that plaintiff's work was done completely at the direction of Pond who continued to employ her and paid her salary, with no interruption. Therefore, say defendants, there was no injury to support a fraudulent misrepresentation claim, and no basis for recovery in quantum meruit because she was fully paid for her work. Plaintiff continued to perform

work for Pond and Gadow for another year and a half, until her termination on July 17, 2006.  She has provided no evidence that Pond or Gadow attempted to conceal the fact that Pond was not leaving to go to school.

Plaintiff claims she did not realize she had been defrauded, and her cause of action did not accrue, until she was sent home on July 11, 2006, immediately prior to her termination.  She stated that Pond told her on July 10th of his plans to advertise and his expectation that he would have eighty (80) new bankruptcy cases per month.  She stated at oral argument that when she went home and had time to reflect on this statement, she realized Pond had tricked her and had no intention to leave his practice.  Her realization of their "scheme" prompted her to complain to Pond and confront Gadow on July 11th.

This court has carefully examined the plaintiff's deposition transcript and her description of the interaction with Pond and Gadow regarding this claim.  The court finds that, based on plaintiff's testimony, she had notice by the end of the Fall of 2005 that Pond had not left the practice as he told her he intended.  The first semester of school had passed and Pond continued to provide her work and a salary.  She also stated during oral argument that she understood during the Fall of 2005 that Pond could not attend Tulane.  McKlemurry's cause of action accrued at the latest by December of 2005.  The statute of limitations for this claim ran at the end of December 2008.

The court grants summary judgment on this claim , finding that McKlemurry knew or should have know by December 2005 that Pond could not bring to fruition his plans to return to school and transfer his law practice to Gadow.

### 2.  Unjust Enrichment

The plaintiff asserts a claim for unjust enrichment against defendant Gadow.  The terms "unjust enrichment" and "quantum meruit" are sometimes used interchangeably, but the Mississippi Supreme Court has identified distinct measures of recovery for each of these actions.  *See Estate of Johnson v. Adkins*, 513 So.2d 922 (Miss. 1987).  "Quantum Meruit recovery is a contract remedy which may be premised either in express or "implied" contract . . .".  *Id* at 926.  The basis of recovery is the "claimant's reasonable expectation of compensation," and damages are measured by the "reasonable value of the materials or services rendered."  *Id*.

"Unjust enrichment is an equitable remedy closely associated with "implied contract" and trusts.  *Id*.  The grounds for recovery for unjust enrichment lie "in a promise, which is implied in law, that one will pay to the person entitled thereto which in equity and good conscience is his."  *Id*.  The measure of recovery "is that to which the claimant is equitably entitled."  *Id*.

In the instant case, the plaintiff is seeking payment under an "implied" contract for the services she rendered to Gadow.  Quantum meruit is the appropriate legal theory under these facts.

The statute of limitations to recover under this "implied" contract is three (3) years pursuant to Miss. Code Ann. § 15-1-49.  *In re: Estate of Stewart*, 732 So.2d 255, 258 (Miss. 1999).  This three year statute of limitations is equally applicable to a claim of unjust enrichment.  *See Kersey v. Fernald*, 911 So.2d 994 (Miss. App. 2005).

Even if McKlemurry continued under the false impression that Pond was transferring his practice to Gadow for one and a half years before discovering the fraud,

McKlemurry has failed to prove the fifth and ninth elements of fraud – an intent to defraud her and her proximate injury.  In her deposition testimony, McKlemurry stated that Pond paid her all of the compensation he owed her as it relates to this claim. McKlemurry depo. at 189.  She has provided no evidence that Pond made false statements intending for her to act to her detriment in reliance thereon.  She has not alleged that Gadow made any statements or representations in this respect.  This court grants defendants Pond and Gadow summary judgment with respect to the claim of fraudulent misrepresentation.

To recover in quantum meruit against Gadow, McKlemurry must show a "reasonable expectation of compensation" to recover the "reasonable value of the [. . .] services rendered."  *Estate of Johnson*, 513 So.2d at 926.  In her deposition testimony, McKlemurry claimed that "Michael Pond told me that when that business transferred, that I would be getting – that John would be my employer, and I would be getting the same salary and the same everything that I was getting from him [Pond]."  McKlemurry depo. at 191-92.  In her own words she describes an agreement in which Gadow had no obligation to pay her until he took over the business from Pond.  In McKlemurry's deposition testimony, she states "[Pond] never did go to college.  He never did give the business to John."  McKlemurry depo. at 192.  She may have been dissatisfied with the arrangement, but makes no indication she tried to alter the initial agreement over the course of the following year and a half.  When she finally objected, on July 11, 2006, she was fired.  McKlemurry has also made no showing that Gadow ever agreed to pay her.  The only promise or agreement that has been evidenced is that when Pond left and transferred the business to Gadow, Gadow would become McKlemurry's employer

and pay her just as Pond had.  But this arrangement never came to pass because of a combination of factors including Hurricane Katrina and Pond and Gadow's dissatisfaction with McKlemurry's work.

Defendant Gadow is granted summary judgment on this claim.

### C. Unlawful Interference with Employment, Slander, Conspiracy, and Wrongful Firing

Plaintiff concedes that she was an "at-will" employee of both Thomas and Pond until they formed the three-year "verbal" contract for employment sometime in late 2003 or early 2004.  McKlemurry depo. at 206.  At that time, she claims that both of her employers had assured her that she "could work as long as [she] wanted to," *Id.*, but she believed she was guaranteed employment for at least the three years of the verbal contract.  In 2005, plaintiff alleges, Gadow interjected himself into her employment relationship with Thomas and Pond, and began to harass her.  She claims he yelled and hollered at her and criticized her job performance.  This harassment and interference with her relationship with Thomas and Pond continued until it came to a head in July of 2006.  Plaintiff alleges that Gadow had "undue" influence over Thomas and Pond because of damaging information he had against them.  McKlemurry depo. at 83.  He used this influence to have her fired.  She also alleges that once she realized in July of 2006 that she had been defrauded by Pond and Gadow into training Gadow in bankruptcy, Thomas, Pond and Gadow conspired to terminate her.

The event leading to her termination was a confrontation between McKlemurry and Gadow on July 11, 2006, in which she alleges she told Gadow that she realized Pond was not leaving and transferring the business to Gadow.  She, therefore, refused to do any further work for Gadow.  At that time, Pond told her to go home and come

back to the office on July 17th.  When she returned to work, Thomas had changed the locks on the building and she could not enter the office.  Sometime between July 11th and July 17th, plaintiff claims, Gadow told Thomas and Pond that in their confrontation, McKlemurry had threatened to shoot him with a 30-06 rifle, and that she planned to sabotage their work.  Second amended complaint, ¶ 17.  Plaintiff alleges that the first she learned of these slanderous statements was in 2009 through discovery in this lawsuit.

Plaintiff asserts the claims of unlawful interference with employment, conspiracy, and wrongful firing against all defendants.  In her charge for unlawful interference with employment, plaintiff claims that Pond interfered with her employment with Thomas, Thomas interfered with her employment with Pond, and Gadow interfered with her employment with both Thomas and Pond.  She asserts her claim of slander against only Gadow.

### 1. Unlawful Interference with Employment

Mississippi law recognizes a claim for unlawful interference with employment, even for "at will" employees, and treats this as a claim for tortious interference with contract.  *See Levens v. Campbell*, 733 So.2d 753 (Miss 1999).  The elements plaintiff must prove are: "1) the acts were intentional and willful; 2) that they were calculated to cause damages to the plaintiff in his lawful business; 3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant; and 4) that actual loss occurred."  *Id* at 760-61.  The plaintiff must prove that "the contract would have been performed but for the alleged interference."  *Id*

at 761.  This type of action carries a statute of limitations of three years.  *Wertz v. Ingalls Shipbuilding, Inc.*, 790 So.2d 841, 845 (Miss. App. 2001).

If plaintiff is able to demonstrate the above elements of tortious interference, a defendant may still be shielded by privilege.  *See Shaw v. Birchfield*, 481 So.2d 247 (Miss. 1993).  "Where a corporation has a contract with another, and where an individual who is an agent of the corporation has responsibilities with respect to the contract, any actions taken in good faith within the scope of those responsibilities with respect to the contract are privileged and thus not actionable."  *Id* at 255.

Because the statute of frauds operates to bar enforcement of an unwritten contract for more than fifteen months (see Section II.A Breach of Verbal Contract regarding the statute of frauds), this court will treat McKlemurry as an "at will" employee with no contract for a definite term of employment.

The evidence before the court regarding this claim includes various statements by McKlemurry and the defendants.  McKlemurry, in her deposition testimony, stated that she had a good working relationship with Thomas and Pond prior to Gadow's interference, and both employers told her she "could work as long as [she] wanted to."  McKlemurry depo. at 206.  She also alleges that Gadow had undue influence over Thomas and Gadow because he had damaging information about them.  McKlemurry depo. at 82.

Defendants Thomas and Pond maintain that they did not harass her and violated no duty to her as an "at will" employee.  Gadow states that McKlemurry has failed to demonstrate the "malice" necessary to prove this claim.  *See Levens v. Campbell*, 733 So. 2d. 753, 760-61 (Miss. 1999).  Gadow also claims that McKlemurry cannot prove

that Thomas and Pond would not have fired her, but for Gadow's alleged interference. He indicates that Thomas and Pond have agreed that McKlemurry needed to be fired and would have fired her regardless of his involvement.

Whether any defendant tortiously interfered with McKlemurry's "at will" employment contract with either Thomas and Pond hinges on the employment relationship between the parties, malice on the part of defendants, and if McKlemurry has provided sufficient evidence to show that either Thomas or Pond would have continued her employment absent interference.  Even if plaintiff has raised sufficient evidence to create a dispute of material fact regarding Gadow's alleged interference, Gadow may be protected by privilege if the court determines that he is within the "chain of privilege" afforded to employers or agents of employers in *Shaw*. *Shaw*, 481 So.2d at 255.

This court has reviewed the parties' exhibits, including:  McKlemurry's deposition, interrogatories of Thomas, Pond and Gadow, MDES documents, and legal documents containing handwritten notes to the plaintiff about her work performance.  There is evidence that Thomas and/or Pond had not decided to fire McKlemurry on July 11th when Pond sent her home.  Thomas indicates he did not know she was fired until after the fact.  The sworn statements and evidence provided by each side paint a very different picture.  These issues should be resolved by a jury which can assess the credibility of the parties.

### 2.  Slander

McKlemurry, to support her slander claim, cites Miss. Code Ann. § 15-1-67,[12] which tolls the running of the statute of limitations for claims which have been fraudulently concealed, but confers no substantive cause of action, and Miss. Code Ann. 11-46-7(2),[13] which addresses the scope of immunity of state government actors sued for certain torts.  The cited statutes do not provide a legal foundation for the cause of action charged by plaintiff.

Mississippi law recognizes an action for the common law tort of slander. To succeed in this claim, a plaintiff must prove the following elements: "(a) a false statement that has the capacity to injure the plaintiff's reputation; (b) an unprivileged publication, i.e., communication to a third party; (c) negligence or greater fault on the part of the publisher; and (d) 'either actionability of statement irrespective of special harm or existence of special harm caused by publication.'" *Speed v. Scott*, 787 So. 2d 626, 631 (Miss. 2001).  The fourth element, which requires "special harm," means that, except for certain specific types of slander, a plaintiff must prove economic damages to prevail on a claim of slander.

---

[12] Miss. Code Ann. § 15-1-67. Fraudulent concealment of claim:
If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.

[13] Miss. Code Ann. § 11-46-7(2). Exclusiveness of remedy:
An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties. For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense.

Plaintiff accuses Gadow of deceptively telling Pond and Thomas she threatened to shoot him and sabotage their legal work.  These deceptions, she claims, led to Pond and Thomas firing her.

Defendant Gadow argues that plaintiff's slander claim is barred by a one-year statute of limitations.  Miss. Code Ann. § 15-1-35.[14]  Plaintiff claims she did not find out about Gadow's slanderous statements until discovery.  She stated that the slander occurred prior to July 17, 2006, that she learned of the slanderous statements on June 23 or 25 of 2009, and amended her complaint to include the charge of slander on November 19, 2009.

Gadow cites several Fifth circuit cases where the court refused to toll the statute of limitations for slander.  *Wilson v. Retail Credit Co.*, 438 F.2d 1043, 1045 (5th Cir. 1971) (The Fifth Circuit refused to toll the one-year statute of limitations for libel, even though allegedly libelous information was contained in plaintiff's credit report, which the credit reporting agency had not revealed to plaintiff.);  EEOC v. Southern Pub. Co., 732 F.Supp. 682 (S.D. Miss. 1988) (relied on *Wilson v. Retail Credit Co.*, 438 F.2d 1043, 1045 (5th Cir. 1971) finding that applying the discovery rule to toll the statute of limitations for slander "would be inconsistent with the Fifth Circuit's interpretation of law.).

The Mississippi Supreme Court has allowed tolling of the statute of limitations for cases of "inherently undiscoverable" defamation.  *See Staheli v. Smith*, 548 So.2d 1299,

---

[14] Miss. Code Ann. § 15-1-35. Actions for certain torts:
All actions for assault, assault and battery, maiming, false imprisonment, malicious arrest, or menace, and all actions for slanderous words concerning the person or title, for failure to employ, and for libels, shall be commenced within one (1) year next after the cause of such action accrued, and not after.

1303 (Miss. 1989).  In *Staheli*, a University of Mississippi professor sued a Dean, alleging that the Dean had defamed him in a written letter recommending he not receive tenure and a pay raise.  The plaintiff filed suit past the one year statute of limitations, alleging he did not know of the libel until "members of the faculty senate told him [. . .] his file included some derogatory comments."  *Id* at 1301.  The trial court granted the defendant's motion for summary judgement based on the statute of limitations for defamation.  The Mississippi Supreme Court reversed, adopting a very limited exception to the statute of limitations for "inherently undiscoverable" actions stating, "[w]e are convinced that the general policies underlying this statute of limitations will not be thwarted by adoption of the discovery rule in that limited class of libel cases in which, because of the secretive or inherently undiscoverable nature of the publication the plaintiff did not know, or with reasonable diligence could not have discovered that he had been defamed."  *Id*.

Plaintiff cites *Channel v. Loyacono*, 954 so.2d 415 (Miss. 2007), to say in defamation cases, the discovery rule only applies to libel, not slander.  *Channel* is a case of legal malpractice by members of a mass tort class against their attorneys who settled their claims.  The trial court found the plaintiffs' claims barred by the statute of limitations, res judicata, collateral estoppel, and settlement and release.  With respect to the statute of limitations, in cases of legal representation and legal malpractice, the court said that Mississippi follows the discovery rule.  The court states that the discovery rule may be applied in either of two circumstances: 1) "when 'the plaintiff will be precluded from discovering harm or injury because of the secretive or inherently undiscoverable nature of the wrongdoing in question'" or 2) "when it is unrealistic to

20

expect a laymen to perceive injury at the time of the wrongful act." *Id.* at 421(internal citations omitted). The court then chose to analyze the plaintiffs' claims under the "layman" standard, instead of the "secretive or inherently undiscoverable" standard because the "secretive and inherently undiscoverable" standard applies "where there is some piece of physical evidence that is the subject of the test." *Id.* (citing *Staheli*, 548 So.2d at 1303).

The facts of this case are very similar to those of *Staheli*. The only difference being that the alleged defamation was accomplished by spoken and not written words. The court in *Staheli* interchanged the words defamation and libel several times. This court sees no reason to prevent plaintiff from taking advantage of tolling based on secretive and inherently undiscoverable defamation in this instance.

### 3. Conspiracy

"A conspiracy exists when two or more persons agree to accomplish 'an unlawful purpose or a lawful purpose unlawfully.'" *Perkins v. Wal-Mart Stores, Inc.*, 46 So.3d 839, 846 (Miss. App. 2010)(internal citations omitted). Plaintiff actually relies on Miss. Code Ann. §§ 97-1-115 and 97-19-39, and the Mississippi Constitution, art. 3, § 24,[16]

---

[15] Miss. Code. Ann. § 97-1-1. Conspiracy defined; punishment**:**
(1) If two (2) or more persons conspire either:

(a) To commit a crime; or

(b) Falsely and maliciously to indict another for a crime, or to procure to be complained of or arrested for a crime; or

(c) Falsely to institute or maintain an action or suit of any kind; or

(d) To cheat and defraud another out of property by any means which are in themselves criminal, or which, if executed, would amount to a cheat, or to obtain money or any other property or thing by false pretense; or

(e) To prevent another from exercising a lawful trade or calling, or doing any other lawful act, by force, threats, intimidation, or by interfering or threatening to interfere with tools, implements, or property belonging to or used by another, or with the use of employment thereof; or

for legal support of her claim of conspiracy.

### 4.  Wrongful Firing

McKlemurry, in her second amended complaint, alleges a claim for "wrongful firing by someone with no legal standing involving her employment," founded in "a common law wrongful discharge doctrine."

Under Mississippi law, an employer may terminate an "at will" employee for "a good reason, a wrong reason, or no reason." *DeCarlo v. Bonus Stores, Inc.*, 989 So. 2d 351, 354 (Miss. 2008)(internal citations omitted); *see Jones v. Fluor Daniel Service Corp.*, 959 So.2d 1044 (Miss. 2007); *see Perry v. Sears, Roebuck & Co.*, 508 So.2d 1086 (Miss. 1987).  Mississippi has carved out two narrow exceptions to this rule. *DeCarlo*, 989 So. 2d at 355.  An employee may maintain a suit for wrongful discharge, despite the rule of at-will employment, if he was terminated because he has either refused to participate in the illegal activities or reports those illegal activities.  *Id.*

With respect to the closely related claims of unlawful interference of employment, slander, conspiracy and wrongful termination, this court finds there to be material issues

---

(f) To commit any act injurious to the public health, to public morals, trade or commerce, or for the perversion or obstruction of justice, or of the due administration of the laws; or

(g) To overthrow or violate the laws of this state through force, violence, threats, intimidation, or otherwise; or

(h) To accomplish any unlawful purpose, or a lawful purpose by any unlawful means; such persons, and each of them, shall be guilty of a felony and upon conviction may be punished by a fine of not more than Five Thousand Dollars ($5,000.00) or by imprisonment for not more than five (5) years, or by both.

[16] MISS. CONST. ART. III, § 24 states:
Open courts; remedy for injury.
All courts shall be open; and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law, and right and justice shall be administered without sale, denial, or delay.

of fact and issues of credibility which preclude granting summary judgment.  Summary

judgment is denied to all defendants as to these claims.

### D.  Criminal impersonation, making fraudulent statements to MDES, retaliation, moral turpitude and aiding and abetting

Plaintiff asserts these claims under Miss. Code Ann. §§ 97-19-83,[17] a criminal

wire fraud statute, and 95-1-1,[18] Mississippi's actionable words statute.  She charges

Gadow with criminal impersonation and making fraudulent statements to MDES to be

used to deny unemployment benefits and avoid the payment thereof.  She accuses

Thomas and Pond of aiding and abetting Gadow in these crimes.  Plaintiff makes claims

of retaliation and moral turpitude against all three defendants.

All of these claims arose from, and depend on, plaintiff's allegation that when

---

[17] Miss. Code Ann. § 97-19-83. Mail fraud states:
(1) Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money, property or services, or for unlawfully avoiding the payment or loss of money, property or services, or for securing business or personal advantage by means of false or fraudulent pretenses, representations or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, transmits or causes to be transmitted by mail, telephone, newspaper, radio, television, wire, electromagnetic waves, microwaves, or other means of communication or by person, any writings, signs, signals, pictures, sounds, data, or other matter across county or state jurisdictional lines, shall, upon conviction, be punished by a fine of not more than Ten Thousand Dollars ($10,000.00) or by imprisonment for not more than five (5) years, or by both such fine and imprisonment.
(2) For the purposes of venue under the provisions of this section, any violation of this section may be prosecuted in the county in which the delivery or transmission originated, the county in which the delivery or transmission was made, or the county in which any act in execution or furtherance of the scheme occurred.
(3) This section shall not prohibit the prosecution under any other criminal statute of the state.

[18] Miss. Code Ann. § 95-1-1. Actionable words; jury issue states:
All words which, from their usual construction and common acceptation, are considered as insults, and calculated to lead to a breach of the peace, shall be actionable; and a plea, exception or demurrer shall not be sustained to preclude a jury from passing thereon, who are the sole judges of the damages sustained; but this shall not deprive the courts of the power to grant new trials, as in other cases.

MDES called the law office to determine the reason for her termination, defendant Gadow intercepted this call and pretended to be Thomas.  Gadow then, allegedly, made derogatory statements about plaintiff in order to have her unemployment benefits denied.

The defendants have provided additional affidavits of Thomas and Pond indicating that MDES could not have reached Gadow at the office because they had the phone number of Personnel Plus, Thomas' and Pond's personal administrators.  Further, Pond stated in his sworn affidavit that it was he who spoke with MDES.

Plaintiff has failed to provide evidence to show that Gadow made any statements to MDES.  Defendants are granted summary judgment as to these claims.

### E.  Mental Anguish, Pain and Suffering, Personal Injury

Plaintiff complains that the stress and suffering inflicted upon her by the defendants caused or aggravated her health problems, including depression, diabetes and arthritis.  She has provided no admissible, medical evidence which would form a causal link between the conduct by defendants and her injuries so as to maintain a claim of personal injury.  Defendants are granted summary judgment as to plaintiff's claim of personal injury.

Plaintiff also charges a count of "mental anguish, pain and suffering."  These are types of damages which will have to be determined in relation to her other substantive claims at trial.

### III.  Conclusion

For the reasons stated above, this court grants summary judgment to all defendants on the claims of fraudulent misrepresentation, unjust enrichment, breach of

verbal contract, legal malpractice, criminal impersonation, making fraudulent statements to MDES, aiding and abetting, retaliation, moral turpitude, and personal injury.  This court denies summary judgment to all defendants on the claims of unlawful interference with employment, slander, conspiracy, and wrongful firing.

**SO ORDERED AND ADJUDGED, this the 17th day of August, 2011.**

**s/ HENRY T. WINGATE**
**UNITED STATES DISTRICT JUDGE**

Civil Action No. 3:09-cv-181 HTW-LRA

Memorandum Opinion and Order
Granting in Part and Denying in Part Summary Judgment